I/S 21 Days

FILED
CLERK, U.S. DISTRICT COURT

6/13/19

CENTRAL DISTRICT OF CALIFORNIA
BY: __CS_____ DEPUTY

DOUGLAS M. MILLER (Cal. Bar No. 240398)
Email: millerdou@sec.gov
KELLY C. BOWERS (Cal. Bar No. 164007)
Email: bowersk@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
John W. Berry, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. SACV19-1174-AG (KESx) |
| Plaintiff, | **COMPLAINT** |
| vs. | (FILED UNDER SEAL) |
| RICHARD VU NGUYEN, A/K/A NGUYEN THANH VU, and NTV FINANCIAL GROUP, INC., |  |
| Defendants, |  |
| and |  |
| MAI DO, |  |
| Relief Defendant. |  |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to Sections 20(b),

COMPLAINT                                    1

20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a), and Sections 209(d), 209(e)(1) and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) & 90b-14.

2. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a) because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because defendant Richard Vu Nguyen a/k/a Nguyen Thanh Vu ("Nguyen") resides in this district and defendant NTV Financial Group, Inc. ("NTV Financial") (collectively with Nguyen, "Defendants") has its principal place of business in this district.

## SUMMARY

4. This action is to halt an ongoing fraud being perpetrated by defendant NTV Financial and its founder, executive director and president, defendant Richard Nguyen, a/k/a Nguyen Thanh Vu. Defendants target primarily Vietnamese speaking individuals living in California and elsewhere, to lure them into investing into, among other things, two fraudulent investments: a purported fund that traded stocks and options, and the chance to have Nguyen personally manage a client's brokerage accounts.

5. Between February 2018 and March 2019, Defendants have raised about $2.4 million from at least 80 investors in the fund investment. Nguyen has also

convinced at least 30 clients to give him password access to their brokerage accounts so that he can trade in them.

6.    Defendants are luring investors into these investment scams using websites, brochures, and radio and television advertisements on Vietnamese language stations.  Defendants claim, among other things, that they can guarantee investors "no loss" of their principal investment and that investors can fully redeem their principal investment at any time.  Defendants further claim that Nguyen has extensive experience managing investments, including having worked at Goldman Sachs ("Goldman") as a fund manager, and that his accounts have never suffered any losses.  According to Nguyen, his trading regime is so effective that other investment firms want to use it, including Goldman, which he says has a contract to use his trading formulas.

7.    Nguyen even talked to an undercover agent for the Federal Bureau of Investigation ("FBI"), whom he thought was a prospective investor, and in that recorded conversation told the agent that he had a track record of earning 1,000% annual returns.

8.    As for the fund, it is pure fiction.  Though Defendants call it the "Nguyen Tran Le Fund" ("NTLF Fund" or the "Fund"), there is no entity with that name.  In fact, there is no entity at all.  Instead, the investor money Defendants raised to invest in that so-called fund is held in accounts in the name of NTV Financial, Nguyen, and/or his girlfriend, relief defendant Mai Do ("Relief Defendant" or "Do").

9.    Since inception, the Fund's performance has suffered significantly due to realized and unrealized trading losses.  Every quarter since its formation, the net amount invested in the Fund has exceeded the market value of the fund's holdings.  As of March 2019, the assets of the NTLF Fund and of NTV Financial, including their known bank accounts and brokerage accounts, totaled about $1.6 million—far below the over $2 million invested by the investors.

10.    Those losses have made it impossible for the Fund to make good on the

Defendants' guaranteed right of redemption.  Defendants also continued to pay some investors dividends and distributed quarterly statements suggesting that the Fund was paying positive returns, all of which gave the false impression that the Fund was performing well when, in fact, its performance had caused the Fund to be undercapitalized, sometimes by as much as 69%.

11.    The brokerage accounts managed by Nguyen have fared no better.  As of March 2019, 17 of the 30 clients who gave him access to trade in their accounts had suffered trading losses totaling almost $570,000.

12.    To make matters worse, Nguyen is also an imposter, and not the experienced investment adviser he makes himself out to be.  Nguyen has never worked at Goldman and Goldman has never contracted with Nguyen to use his trading formulas.

13.    In reality, Nguyen has racked up an extensive criminal history that he has never disclosed to the Fund investors or brokerage account clients.  In 2009, he pleaded guilty to wire fraud and admitted that he participated in a scheme to use the internet to intentionally mislead his victims into giving him money for an investment fund.  In 2012, Nguyen was convicted of felony dependent adult abuse in California State Court.  Nguyen has also been sanctioned twice by the California Department of Corporations for securities related misconduct.

14.    Defendants have also used investor money to pay NTV Financial's unrelated business expenses or to pay Nguyen's and Do's personal expenses.  Given the Fund's market losses that have made it impossible to honor Defendants' redemption guarantee, and the Fund's poor performance, the Defendants should not have been able to take the profits from the Fund for themselves.

15.    Defendants misappropriated about $600,000 of investor money invested in the Fund.  Defendants operate several other unrelated businesses (such as a restaurant and a restaurant supply company), and have commingled investor money and non-investor money from these other businesses in the same accounts.  They then

used those accounts to pay their own expenses.  For example, $335,000 this commingled money was used to purchase jewelry, a car and a motorcycle, to make payments to the Defendant's children, make mortgage payments and used to make approximately $354,000 in payments towards the purchase of a $1 million home in the name of Relief Defendant Mai Do.

16.     Defendants' fraudulent conduct is ongoing and continues to threaten investors.  Indeed, as recently as May 11, 2019, Defendants were continuing to solicit new investors.

17.     By committing these and other acts alleged in this Complaint, Defendants have directly and indirectly engaged in, and unless restrained and enjoined by the Court will continue to violate the anti-fraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act [15 U.S.C. § 17q(a)] and Section 10(b) of the Securities Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2) & (4) and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

18.     In light of Defendants' ongoing conduct, the SEC seeks a temporary restraining order and preliminary and permanent injunctions prohibiting future such violations.  Specifically, the SEC seeks orders prohibiting Defendants from directly or indirectly, including through any entity they own or control, accessing any securities brokerage account of any third-party, including doing so with the consent of the account holder; freezing Defendants' and the Relief Defendant's assets; providing expedited discovery from the Defendants and Relief Defendant; requiring preservation of documents by the Defendants and the Relief Defendant; ordering an accounting of Defendants' and the Relief Defendant's assets; appointing a receiver over defendant NTV Financial and over the bank and brokerage accounts through which investor and client funds have flowed; disgorging Defendants' ill-gotten gains with prejudgment interest and disgorging funds held by the Relief Defendant; and

imposing civil penalties against Defendants.

## THE DEFENDANTS

19.     **NTV Financial Group, Inc.** is an active California corporation that Nguyen incorporated in 2018, which has its principal place of business in Garden Grove, California.  NTV Financial is not registered with the SEC in any capacity.

20.     **Richard Vu Nguyen, a/k/a Nguyen Thanh Vu** is a resident of Santa Ana, California and the founder, executive director, and president of NTV Financial. Nguyen has two felony convictions, two securities-related administrative sanctions, and is not currently registered with the SEC in any capacity.

## THE RELIEF DEFENDANT

21.     **Mai Do** is a resident of Garden Grove, California, the girlfriend of Nguyen, and someone Nguyen has held out as the chief financial officer of NTV Financial.  Do is not registered with the Commission in any capacity.

## THE FRAUD

A.     **NTV Financial and Richard Nguyen**

22.     Defendant NTV Financial is a company that claims to provide companies with a whole range of services designed to improve their profitability, including capital, operational improvements, revenue growth, procurement, leadership, lean process, IT optimization, energy sustainability, and employee health care.  It further claims that it had worked with companies on merger and acquisition projects and on industry reorganization.

23.     Defendant Richard Nguyen is the founder, executive director, and president of NTV Financial.

24.     Relief defendant Mai Do is Nguyen's girlfriend and is portrayed as the chief financial officer of NTV Financial.

25.     Defendants also operate several other businesses.  For example, they operate a restaurant, a restaurant supply company and a home remodeling business.

26.     Nguyen has a criminal past and several run-ins with regulatory

COMPLAINT                                       6

authorities that he has concealed from investors.

27. In 1999, the California Department of Corporations ("CDC") named Nguyen in a Desist and Refrain Order for securities related misconduct. In 2007, the CDC named Nguyen in a second Desist and Refrain Order for acting as an unregistered broker-dealer.

28. On or about August 24, 2009, Nguyen entered a guilty plea to wire fraud charges in the matter of *United States v. Richard Nguyen*, Case No. CR 08-796(A)-ABC (C.D. Cal.), a criminal case filed in this district. As part of his guilty plea, Nguyen admitted that he created a scheme to use the internet to intentionally mislead his victims into giving him their money by claiming he would invest that money in genuine investment funds. In furtherance of the scheme, Nguyen created and controlled the website www.bhshfunds.com, where he purportedly offered for sale shares in investment funds and promised investors they could redeem their investment upon request. Nguyen also created electronic mail and webpages that led his victims to believe they had purchased shares in the funds, when, in fact, he had not invested their money in the funds.

29. On November 24, 2009, a Judgment and Commitment Order was entered against Nguyen in connection with the wire fraud charges. Nguyen was ordered to pay a $100 special assessment, restitution in the total amount of $104,981, and imprisoned in federal prison for a term of 15 months, followed by a three-year period of supervised release.

30. On June 4, 2012, while still on supervised release, a jury in the matter of *People v. Nguyen*, Super. Ct. No. 11WF0913, Superior Court of Orange County California, found Nguyen guilty of felony infliction of injury on a dependent adult, in violation of California Penal Code Section 368(b)(1).

31. On August 17, 2012, an Orange County Superior Court Judge sentenced Nguyen to two years in prison for the dependent adult abuse and assessed restitution and parole revocation fines against Nguyen totaling $240. On October 29, 2013, the

California Fourth Appellate District, Division Three, affirmed Nguyen's state conviction and sentence.

32.     In addition to lying to investors about his background, Nguyen has taken other steps to conceal this criminal past.  For example, when he filed articles of incorporation on behalf of NTV Financial with the State of California in May 2019, he filed them under the name "Vu Thanh Nguyen" instead of the name Richard Nguyen, which was the name listed in the two criminal convictions and two administrative sanctions.

33.     Nguyen also listed his name as "Nguyen Thanh Vu" on NTV Financial's website.

**B.     Defendants' Fraudulent Investment Opportunities**

34.     NTV Financial and Nguyen use the internet, radio and television, as well as in-person meetings and brochures, to lure investors into two fraudulent investment schemes.  One is the NTLF Fund, which they claimed trades in stocks and options.  The other is the chance to have Nguyen manage individual clients' brokerage accounts.

35.     In addition to its website, NTV Financial paid to air weekly video broadcasts and posted several videos about NTV Financial on YouTube and Facebook.  The video broadcasts were structured as a talk show called "Kim Tien Sat Phat," or translated, "Golden Money – Winning at All Costs."  These shows air several times a week on a nationwide Vietnamese-language station on DirecTV and a local station in Southern California.

36.     In these videos, Defendants often touted Nguyen's investment experience and offered investors several investments.  Although these online videos varied over time, several claimed that Nguyen was an investment banker, the executive director of NTV Financial, someone with more than 20 years of investment experience at Goldman, and, in one or more of those videos, Nguyen personally claimed to have been a fund manager at Goldman and to have managed a "few

dozen" funds in the past.

### 1.    The NTLF Fund

37.    Defendants have raised about $2.4 million from at least 80 investors in the NTLF Fund.

38.    Although described as a "fund," the NTLF Fund is not an entity.  The Fund's money is instead held in bank accounts in the name of NTV Financial, Nguyen and/or Do.  As described below, that money is then commingled with money coming from Defendants' other businesses.

39.    When investors invest in the Fund, they receive an "interest" in the so-called "fund" at a price of $10 per share.  The investor money was pooled together to trade in options as part of a common enterprise, and investors expected to make money on that investment based on the trading and efforts of Defendants.

40.    The NTV Financial website at one time described Nguyen as a "Fund Manager" of the NTLF Fund, with "extensive experience in the areas of investment, start up, and corporate governance."

41.    The website offered investors the opportunity to invest in the NTLF Fund and identified four "Key Offerings" of the Fund: (1) a target return on investment ("ROI") of 35%, (2) quarterly dividends, (3) a minimum investment of $5,000, and (4) no lock-in period, meaning investors could redeem their principal investment at any time.

42.    The website described the NTLF Fund as having a "No Net Loss Policy" and stated that NTV Financial would maintain a net capital reserve equal to 35% of the NTLF Fund.  The 35% reserve was purportedly kept in a "segregated account" to guarantee that all investor capital was protected.

43.    In a video aired on or about February 12, 2018, Nguyen offered investors the opportunity to invest in what he described as the NTLF Fund.  Nguyen claimed to be launching the NTLF Fund so that it could one day be listed on Wall Street and become the only fund with all Vietnamese fund managers.

44.     Nguyen told investors that the NTLF Fund needed at least 130 investors and portfolio with a minimum value of $1.3 million in order to be registered with the SEC.  Nguyen claimed to already have 30 investors and said only 100 spots were left. Nguyen said he was not certain whether he would close the NTLF Fund once it reached its goal of 130 investors, but investors "better hurry" if they wanted to join the NTLF Fund.

45.     Nguyen told investors that the NTLF Fund had a minimum investment amount of $5,000 and promised that he would "bundle" their money into one account, which Nguyen would personally manage.  Nguyen promised to pay investors a dividend each quarter and to hire an accountant to file and pay the taxes on those dividends, so they were tax free by the time the investors received them.

46.     In a video aired on or about June 4, 2018, Nguyen's co-host told investors they would not be charged any fees in connection with the NTLF Fund, their initial investment was guaranteed to be protected from loss, and they could redeem their initial investment at any time.  During this same video, Nguyen told investors he utilized a "10-day" trading rule when investing, which he said had a patent pending because several investment companies wanted to use it in their trading software.

47.     In a video aired on or about August 13, 2018, Nguyen told investors he was launching a new version of the NTLF Fund with a fixed return of 16% annually (or 4% quarterly).  Nguyen said he was offering a fixed return based on the demands of his clients, whom he claimed did not like fluctuations in their ROI and wanted a fixed ROI.  The NTLF Fund still required a minimum investment of $5,000, still guaranteed investors 100% of their initial investment, and still had no lock-in period, meaning investors could redeem their investments at any time.

48.     In a video aired on or about October 15, 2018, Nguyen re-emphasized his 10-day trading rule, claiming that he had a contract with Goldman Sachs to use the 10-day trading rule in Goldman Sachs' trading formulas.  Nguyen told investors

that the greatest honor of NTV Financial was that its accounts "never, never" failed to make money.

49.    In a radio show posted on YouTube on or about April 19, 2019, Nguyen's co-host introduced Nguyen as "an investment banker and an underwriter with two decades of experience working in securities investments with one of the leading financial giants, Goldman Sachs."

50.    In that same video, Nguyen told investors that "from here on out, you [will] never hear the word 'guarantee' and 'guarantee investment' from us," but said that he knew "for a fact" and "for sure" he would "protect" investors' assets.  Nguyen also told investors that NTV Financial had ended its 16% interest program and was now offering a 12% interest program.  Nguyen still offered investors 12% interest every year, and promised to send investors a check reflecting 3% of the invested amount every quarter.  Nguyen told investors they could still withdraw their principal anytime, but the initial minimum investment was raised to $10,000.  After that, investors could contribute as much as they wished, so long as it was at least $5,000.

**2.    Individually Managed Brokerage Accounts**

51.    At least 30 people have given Nguyen access to their brokerage accounts so that he can trade in them.  These clients give him, for example, their passwords and usernames, which enables him to access the accounts online and trade stock or options in the accounts at his discretion.

52.    Nguyen has been managing brokerage accounts for at least 30 clients between August 2018 and May 2019.  Those clients have deposited a total of at least $1.9 million into those accounts.

53.    In a video aired on or about July 23, 2018, Nguyen offered to personally manage the individual brokerage accounts of investors in addition to managing the NTLF Fund.  Nguyen told investors they just had to open an investment account at a brokerage firm, deposit a minimum amount of $50,000 into the investment account, and, once the investment account was opened, Nguyen would use the investors'

passwords and usernames to execute trades on the investors' behalf.

54.     Nguyen told investors that NTV Financial would charge investors a 50% performance fee on any profits Nguyen earned in these personally managed accounts and would distribute those profits to the investors once they reached 15% to 20% of the investors' initial investments.

55.     In a video aired on or about October 15, 2018, Nguyen claimed to be very successful at trading on behalf of investors in their personally managed accounts.  In that same video, Nguyen told investors that the greatest honor of NTV Financial was that its accounts "never, never" failed to make money.

56.     In a radio show posted on YouTube on or about April 19, 2019, Nguyen told investors they could still have Nguyen personally manage their investment accounts, regardless of whether the investment accounts were at TD Ameritrade, Fidelity, Merrill Lynch or anywhere else.  However, Nguyen told investors that the investment accounts now had to have a minimum of $100,000 for Nguyen to personally management them and told investors they had to liquidate all the stocks in those accounts to cash.  Investors were told they still had to give Nguyen their username and password, so he could personally login and trade on their behalf, and they still had to split the profits from Nguyen's trading "50/50."

**3.     Defendants Are Acting As Investment Advisers**

57.     During all relevant times, NTV Financial and Nguyen acted as investment advisers to the NTLF Fund and to the clients who gave Nguyen access to their individual brokerage accounts.

58.     NTV Financial and Nguyen advised the Fund about investing in stocks and options.  They received compensation when they took trading profits in excess of promised returns and when they used investor money for their own benefit. Defendants also held out the NTLF Fund as a fund engaged in the business of trading securities.

59.     Likewise, they advised the clients with the separately managed

brokerage accounts about stock and options trading, and also received compensation in the form of trading profits.

**C.     Defendants' Statements to Fund Investors and Separately Managed Clients**

60.     In addition to its website and its weekly video broadcasts, NTV Financial solicited investors through telephonic and face-to-face meetings.  The following are some examples of the representations Defendants made to investors and prospective investors regarding NTV Financial during those telephonic and face-to-face meetings:

**1.     Investor A**

61.     In or about February 2018, Nguyen spoke with "Investor A" over the telephone after Investor A had watched one or more videos about NTV Financial on a Vietnamese television station and after Investor A had visited the NTV Financial website.  Investor A was attracted to NTV Financial by its claim that investors would earn up to a 30% return on their investment through options trading.

62.     Nguyen told Investor A that his name was "Vu Nguyen" and claimed to have received his Masters in Business Administration from California State Polytechnic University, Pomona ("Cal Poly") before working on Wall Street.

63.     Nguyen promised Investor A a 16% fixed annual return on investment. Nguyen said he would generate these returns through buying and selling options. Nguyen did not disclose how he would go about buying and selling options, but told Investor A that he would use investor funds to keep investing in more and more options.  All of this led Investor A to believe that Nguyen would be pooling Investor A's money with other investor money so as to increase the overall volume of options trading in the NTLF Fund.

64.     Nguyen also led Investor A to believe that investor funds would be kept in a separate account in order to protect those funds, so that if Investor A ever requested to redeem the principal, Nguyen could withdraw that money from the

1    separate account and return it to Investor A.

2        65.    Nguyen never identified himself as "Richard Nguyen" to Investor A and

3    never disclosed to Investor A that he had sustained two felony convictions and two

4    adverse administrative rulings under the name Richard Nguyen.

5        66.    After speaking with Nguyen over the telephone, Investor A invested

6    $5,000 in the NTLF Fund and soon began receiving quarterly payments between 3%

7    and 4%.  Nguyen sent Investor A statement-like updates via email that showed

8    Investor A's initial investment and the dividend amount for that quarter.

9        **2.    Investor B**

10       67.    In or about April 2018, Nguyen met face-to-face with Investor B at a

11   restaurant in Orange County, California.  Investor B arranged to meet with Nguyen

12   after watching one or more videos about NTV Financial on a Vietnamese-language

13   television station.

14       68.    Nguyen told Investor B that if Investor B invested in the NTLF Fund,

15   Nguyen would guarantee a minimum return of 16% annually and no loss of principal.

16   Nguyen told Investor B that he had worked with Goldman Sachs for 15-20 years and

17   would generate the returns through buying and selling stocks.  Nguyen led Investor B

18   to believe that other investors were investing in the NTLF Fund and that everyone

19   would share in the profits of the Fund.

20       69.    Nguyen told Investor B that he also went by the name "Richard

21   Nguyen," but never told Investor B he had suffered two felony convictions and two

22   administrative sanctions under that name.

23       70.    Investor B invested $50,000 in the NTLF Fund on the same day Investor

24   B met face-to-face with Nguyen.  Nguyen did not have Investor B sign any

25   investment adviser agreements or similar paperwork, but told Investor B the

26   investment could be redeemed at any time.

27       71.    After investing $50,000 in the NTLF Fund, Investor B soon began

28   receiving quarterly dividend payments.  In the beginning, the quarterly payments

COMPLAINT                          14

were occasionally higher than 4%.  Later, Nguyen told Investor B that all future

payments would be fixed at 4% quarterly and 16% annually.

72.     Nguyen sent Investor B statement-like updates via email that showed

Investor B's initial investment and the dividend for that quarter.  Investor B later

invested more than $50,000 in the NTLF Fund and ultimately invested a total of

approximately $300,000 in the NTLF Fund.

**3.     Client C**

73.     In or about August 2018, Client C allowed Nguyen to begin managing

her investment account at TD Ameritrade.

74.     Client C has never met Nguyen and only knows what he looks like

through watching the videos she has watched through her television network.  Client

C did, however, speak with one of Nguyen's employees over the telephone, who

explained to Client C how to open a TD Ameritrade account, told Client C they

would manage the account, and that any profits would be split in half (along with the

taxes) between Client C and Nguyen.

75.     Client C recalls seeing videos of Nguyen claiming to have an MBA and

to have worked at Goldman Sachs and as an investment banker.  Client C viewed

these qualifications as very important in deciding to allow Nguyen to manager the

investment account at TD Ameritrade because it led Client C to believe he knew

more about what he was doing and had a higher chance of success.

76.     Client C's investment account has not made any money through

allowing Nguyen to manage it but Client C can see that Nguyen has been trading in

the account.

77.     Client C never heard Nguyen referred to as "Richard Vu Nguyen" and

was not aware that Nguyen had been convicted any crimes, including dependent adult

abuse.  Client C would have wanted to know about Nguyen's convictions before

allowing him to manager the investment account and would not have given Nguyen

money if Client C knew about his conviction for dependent adult abuse.

### 4.     Undercover FBI Agent

78.     On or about April 8, 2019, Nguyen met face-to-face with a prospective investor at the offices of NTV Financial.  Unbeknownst to Nguyen, the prospective investor was actually an undercover agent ("UC") for the FBI, who secretly recorded his/her face-to-face meeting with Nguyen.

79.     Nguyen told UC he could guarantee UC a fixed return of 16% annually, if UC invested a minimum of $10,000 in the NTLF Fund.  Nguyen told UC he was the fund's manager and would generate the 16% return by trading stocks and options.

80.     Nguyen told UC he would receive quarterly payments (or dividends) of 4% and quarterly statements via email reflecting those payments.  Nguyen told UC that the statements would be prepared by a certified public accountant and described the investment as 100% safe and fully redeemable at any time.  When UC asked Nguyen about his track record in the last five years, Nguyen told UC he made a 1,000% return annually.

81.     Nguyen also offered to personally manage an investment account on behalf of UC.  Nguyen told UC he would need to open the investment account in UC's name and deposit a minimum of $100,000 into the account.  UC would also have to give Nguyen the username and password for the investment account, so Nguyen could start trading on behalf of UC.  Nguyen told UC that if trading in the investment account was profitable, UC would have to take those profits out of the investment account, deposit them into UC's checking account, and write Nguyen a check for half the amount of the profits.

### D.     The Poor Performance of the NTLF Fund and the Managed Accounts

82.     The NTLF Fund has had negative performance since its inception in February 2018.

83.     In managing the Fund, Nguyen engages in a significant amount of trading in the brokerage accounts holding the investors' money, principally in margined option trading.  This trading has resulted in large losses and some large

gains.

84.    As a result of these and other losses, in every quarter since the inception of the NTLF Fund, the overall market value of the Fund's assets has been less than the net principal invested in the Fund, sometimes by as much as 69% less, as illustrated in the table below:

| Quarter/Year | Total Bank & Brokerage Balance/Value | | Net Investor Deposits (Accumulated) | | Under-Capitalized | | % Under-Capitalized |
|---|---|---|---|---|---|---|---|
| Q 1 2018 | $ | 31,722.85 | $ | 45,000.00 | $ | (13,277.15) | **-29.5%** |
| Q 2 2018 | $ | 163,959.73 | $ | 296,000.00 | $ | (132,040.27) | **-44.6%** |
| Q 3 2018 | $ | 589,073.66 | $ | 897,000.00 | $ | (307,926.34) | **-34.3%** |
| Q 4 2018 | $ | 569,555.22 | $ | 1,848,500.00 | $ | (1,278,944.78) | **-69.2%** |
| Q 1 2019 | $ | 1,653,230.86 | $ | 2,209,500.00 | $ | (556,269.14) | **-25.2%** |

85.    The brokerage accounts managed by Nguyen on behalf of at least 30 clients have also not performed well.

86.    As of March 2019, 17 clients, who deposited a total of about $1.19 million into their accounts, have suffered trading losses totaling almost $570,000.

**E.    Defendants' Fraud**

87.    Defendants misled clients and potential clients to believe that Nguyen was an experienced financial trader with an impeccable track record trading and that they would not lose any of their principal if they invested with Defendants.  Yet, Nguyen concealed and lied about his real past, and both the NTLF Fund and the individually managed brokerage accounts suffered significant losses, including losses in investor principal.

**1.    Nguyen's History of Criminal and Regulatory Sanctions**

88.    As described *infra*, Defendants misled investors about Nguyen's background by failing to disclose that several years before Nguyen became the executive director of NTV Financial, he had been convicted of two felonies in federal and state courts and had been sanctioned twice by the CDC for securities related misconduct.

89. Defendants' misrepresentations and omissions regarding Nguyen's background, particularly his prior criminal history for investment fraud, pertained to material facts that reasonable investors would have found important in making their investment decisions.

90. The misrepresentations and omissions regarding Nguyen's background were made by Defendants and each of them received money in the form of investors' funds, by means of those misrepresentations and omissions.

91. Defendants knew, or were reckless in not knowing, that failing to disclose Nguyen's two felony convictions and the fact that he had been sanctioned twice by the CDC misled investors as to Nguyen's background and fitness to manage their investments.

92. At a minimum, Defendants did not exercise reasonable care in failing to disclose Nguyen's two felony convictions and the fact that he had been sanctioned twice by the CDC to investors, and thus were negligent.

**2.  Nguyen's Credentials and Employment History**

93. As described *infra*, Defendants made materially false and misleading statements to clients and potential clients about Nguyen's credentials and employment history as an investment adviser.  Contrary to Defendants' statements to investors, not only had Nguyen never received an MBA from Cal Poly, he never worked for or had any kind of contractual relationship with Goldman.

94. Goldman has no record of Nguyen ever being employed there.

95. Nor did Goldman ever have any contract with Nguyen for his so-called "10-day trading rule," or for anything else.

96. Defendants' misrepresentations regarding Nguyen's business relationship with Goldman and his prior employment at that company pertained to material facts that reasonable investors would have found important in making their investment decisions.

97. The misrepresentations regarding Nguyen's business relationship with

Goldman and his prior employment at that company were made by Defendants and each of them received money in the form of investors' funds, by means of those misrepresentations.

98.     Defendants knew, or were reckless in not knowing, that claiming Nguyen had a business relationship with Goldman and had previously been employed there misled investors as to Nguyen's background and fitness to manage their investments.

99.     At a minimum, Defendants did not exercise reasonable care in their representations to investors regarding Nguyen's business relationship with Goldman and prior employment there, and thus were negligent.

### 3.     The Fund's Guaranteed "100%" Redemption Right

100.     As described *infra*, Defendants misled Fund investors as to their ability to withdraw their monies at any time.

101.     On the NTV Financial website, Defendants told investors a "Net Capital" reserve equal to 35% would be created and kept in a "segregated account" as part of a "No Net Loss" policy.  However, none of the investor funds were placed into a segregated account and used to create a net capital reserve equal to 35% of the NTLF Fund.

102.     Defendants misled investors and potential investors to believe that investing with NTV Financial would be 100% safe, the accounts would "never, never" fail to make money, Nguyen had a track record of earning as high as a 1,000 percent return annually, and investors could redeem their principal investment at any time.  In reality, Nguyen suffered significant realized and unrealized losses of investors funds despite his so-called 10-day trading rule and despite continuing to pay some investors their guaranteed returns.

103.   This undercapitalization of the Fund relative to the investors' right of redemption between February 2018 and March 2019 is further illustrated in the chart below:



104.   Reasonable investors would have considered it important in their investment decision to know that Defendants could not honor the right of redemption due to the NTLF Fund being undercapitalized at the time they invested.

105.   The misrepresentations and omissions regarding the ability of investors to withdraw their money from the Fund were all made by Defendants and each of them received money in the form of investors' funds, by means of those misrepresentations and omissions.

106.   Defendants knew, or were reckless in not knowing, that statements regarding investors' ability to withdraw their money from the Fund on demand misled investors.

107.   At a minimum, defendants failed to exercise reasonable care when making representations to investors about their ability to withdraw money on demand from the Fund.

### 4.     The Poor Performance of the NTLF Fund

108.   As described *infra*, Defendants misled investors in the NTLF Fund with respect to the Fund's positive performance.

109.   Defendants represented that the Fund was achieving double digit returns while concealing that the Fund had significant losses.

110.   Defendants falsely represented to the UC that returns of 1,000% had been achieved.

111.   Reasonable investors would have considered it important in their investment decision to know that the Fund was experiencing losses.

112.   The misrepresentations regarding the Fund's performance were made by Defendants, and each of them received money in the form of investors' funds, by means of those misrepresentations and omissions.

113.   Defendants knew, or were reckless in not knowing, that statements regarding the NTLF Fund's performance misled investors as to how Defendants' investments were faring.

114.   At a minimum, defendants failed to exercise reasonable care when making representations to investors about the NTLF Fund's performance.

### 5.     Defendants' Misuse of Investor Funds

115.   As described *infra*, Defendants misled investors in the NTLF Fund with respect to how investor funds would be handled and spent.

116.   During a video aired in February 2018 Nguyen told investors their money would be "bundled into one account or one fund."  Instead, there was no actual "fund"; rather, investor money was moved around between bank and brokerage accounts held in the name of Nguyen, NTV Financial, and Relief Defendant Mai Do.

117.   Defendants were also misappropriating, and allowing others to misappropriate, large sums of money from bank accounts commingled with investor funds.  While some of the deposits into those bank accounts also came from non-investor funds, including Defendants' other businesses, the undisclosed and

unauthorized expenditures exceeded those non-investor funds that were deposited by approximately $600,000.

118.   The following are examples of some of the undisclosed and authorized expenditures Defendants made between February 1, 2018 and March 31, 2019, while NTV Financial was undercapitalized:

| Expenditure | Amount |
|---|---|
| Payments toward the purchase of a $1 million home in the name of Relief Defendant Mai Do | $354,000 |
| Cash Withdrawals | $224,000 |
| Payments to jewelry and watch stores | $148,000 |
| Purchase of Car and a Motorcycle (Harley Davidson) | $109,000 |
| **TOTAL** | **$835,000** |

119.   Investors were not aware that their funds were being deposited into these bank accounts and commingled with non-investor money, including Defendants' other businesses, or that a portion of investor funds was being used for these and other undisclosed and unauthorized purposes.

120.   Reasonable investors would have considered it important in their investment decision to know that investor funds were being used for purposes other than what Defendants disclosed to them at the time they invested.

121.   The misrepresentations and misleading statements regarding how investor funds would be handled and spent were all made by Defendants and each of them received money in the form of investors' funds by means of those misrepresentations and omissions.

122.   Defendants knew, or were reckless in not knowing, that investor funds were being mishandled and misappropriated and that their statements regarding how investor funds would be handled and spent misled investors.

123.   At a minimum, defendants failed to exercise reasonable care when

handling and spending investors' funds, and in making representations to investors about how investor funds would be handled and spent.

**F.     Relief Defendant Do's Unjust Enrichment**

124.   Relief Defendant Mai Do, whom Nguyen held out as the CFO of NTV Financial, received investor funds from Defendants.

125.   During the relevant time period, Do received investor funds from Defendants into several bank and brokerage accounts held in her name.

126.   Additionally, Do received approximately $354,000 in the form of payments towards the purchase of a $1 million home in her name.

127.   Do had no legitimate claim to these monies, since they were derived from the fraudulent scheme outlined above and constituted ill-gotten gains.

<u>**FIRST CLAIM FOR RELIEF**</u>

**Fraud in the Connection with the Purchase and Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

**(against all Defendants)**

128.   The SEC realleges and incorporates by reference paragraphs 1 through 128 above.

129.   NTV Financial and Nguyen each defrauded prospective and actual investors and clients by making false and misleading statements about Nguyen's background and employment history.  NTV Financial and Nguyen misled Fund investors about the NTLF Fund's very existence, its performance, the ability of investors to withdraw their money from the Fund, how investor money would be spent, and the overall nature of the investment.  In soliciting clients for the separately managed accounts, NTV Financial and Nguyen misrepresented past trading performance.  Further, NTV Financial and Nguyen also misappropriated investor funds.

130.   By engaging in the conduct described above, NTV Financial and Nguyen, and each of them, directly or indirectly, in connection with the purchase or

sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange:  (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

131.   NTV Financial and Nguyen knew, or were reckless in not knowing, that they employed devices, schemes and artifices to defraud; made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in acts, practices or courses of conduct that operated as a fraud on the investing public by the conduct described in detail above.

132.   By engaging in the conduct described above, NTV Financial and Nguyen violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a), 240.10b-5(b) & 240.10b-5(c).

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a) of the Securities Act

### (against all Defendants)

133.   The SEC realleges and incorporates by reference paragraphs 1 through 128 above.

134.   NTV Financial and Nguyen each defrauded prospective and actual investors and clients by making and obtaining money via false and misleading statements about Nguyen's background and employment history.  NTV Financial and Nguyen misled Fund investors about the NTLF Fund's very existence, its performance, the ability of investors to withdraw their money from the Fund, how

investor money would be spent, and the overall nature of the investment.  In soliciting clients for the separately managed accounts, NTV Financial and Nguyen misrepresented past trading performance.  Further, NTV Financial and Nguyen also misappropriated investor funds.

135.   By engaging in the conduct described above, NTV Financial and Nguyen, and each of them, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly:  (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

136.   Defendants NTV Financial and Nguyen, with scienter, employed devices, schemes and artifices to defraud; with scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and, with scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

137.   By engaging in the conduct described above, Defendants NTV Financial and Nguyen violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(2), & 77q(a)(3).

# THIRD CLAIM FOR RELIEF

## Fraud by an Investment Adviser

## Violations of Sections 206(1) and 206(2) of the Advisers Act

## (against all Defendants)

138.   The SEC realleges and incorporates by reference paragraphs 1 through 128 above.

139.   Defendants NTV Financial and Nguyen each defrauded actual and potential separately managed account clients by making false and misleading statements and omissions to investors about Nguyen's background and employment history and Defendants' trading results.

140.   By engaging in the conduct described above, NTV Financial and Nguyen, and each of them, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce employed or are employing devices, schemes or artifices to defraud clients or prospective clients, and engaged in or are engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

141.   NTV Financial and Nguyen, with scienter, employed devices, schemes or artifices to defraud clients or prospective clients; and with scienter or negligence, engaged in transactions, practices, or course of business which operated as a fraud or deceit upon clients or prospective clients.

142.   By engaging in the conduct described above, NTV Financial and Nguyen have violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Sections 206(1) and (2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

### FOURTH CLAIM FOR RELIEF

**Fraud Involving a Pooled Investment Vehicle**

**Violations of Section 206(4) of the Advisers Act and**

**Rule 206(4)-8(a)(1) and (a)(2)**

**(against all Defendants)**

143.   The SEC realleges and incorporates by reference paragraphs 1 through 128 above.

144.   Defendants held the NTLF Fund out as a pooled investment vehicle. NTV Financial and Nguyen each defrauded prospective and actual investors by making false and misleading statements about Nguyen's background and employment history.  NTV Financial and Nguyen misled Fund investors about the NTLF Fund's very existence, its performance, the ability of investors to withdraw their money from the Fund, how investor money would be spent, and the overall nature of the investment.  Further, NTV Financial and Nguyen also misappropriated investor funds.

145.   By engaging in the conduct described above, Defendants NTV Financial and Nguyen, and each of them, directly or indirectly, by engaging in the conduct described above, while acting as an investment adviser to a pooled investment vehicle, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce:  (a) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which there were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; or (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

146.   Defendants NTV Financial and Nguyen knew, or were reckless or negligent in not knowing, that they (a) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the

light of the circumstances under which there were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; and (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

147. By engaging in the conduct described above, Defendants NTV Financial and Nguyen have violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8(a)(1) and 8(a)(2) thereunder, 17 C.F.R. § 275.206(4)-8.

## FIFTH CLAIM FOR RELIEF

### Unjust Enrichment

### (against Relief Defendant Mai Do)

148. The SEC realleges and incorporates by reference paragraphs 1 through 128 above.

149. Relief Defendant Mai Do received and then retained investor funds from Defendants NTV Financial and Nguyen in bank and brokerage accounts held in her name, and received another approximately $354,000 in proceeds. She has no legitimate claim to these monies.

150. Relief Mai Do obtained the ill-gotten gains described above as part of the securities law violations alleged above, under circumstances in which it is not just, equitable, or conscionable for her to retain the funds.

151. By engaging in the foregoing conduct, Relief Defendant Mai Do has been unjustly enriched and must disgorge her ill-gotten gains.

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

COMPLAINT

28

## II.

152.   Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, preliminarily and permanently enjoining Defendants NTV Financial and Nguyen, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating the Securities Act [15 U.S.C. § 17q(a)] and the Exchange [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), 206(2), and 206(4) of the Advisers [15 U.S.C. §§ 80b-6(1), (2) & (4) and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## III.

153.   Issue, in a form consistent with Fed. R. Civ. P. 65, an order prohibiting Defendants from directly or indirectly, including through any entity they own or control, accessing any securities brokerage account of any third-party, including doing so with the consent of the account holder; freezing Defendants' and the Relief Defendant's assets, as well as providing other ancillary relief, including expedited discovery, preservation of documents, an accounting of Defendants' and the Relief Defendant's assets; and appointing a receiver over defendant NTV Financial and bank or brokerage accounts into which the funds of Defendants' investors and/or clients have flowed.

## IV.

154.   Order Defendants to disgorge, jointly and severally, all funds received from their illegal conduct, together with prejudgment interest thereon.

## V.

155.   Order the Relief Defendant to disgorge the approximately $354,000 in funds she received from Defendants' illegal conduct, together with prejudgment interest thereon.

## VI.

156.    Order Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

**VII.**

157.    Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VIII.**

158.    Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  June 13, 2019

*/s/ Douglas M. Miller*
DOUGLAS M. MILLER
KELLY C. BOWERS
Attorney for Plaintiff
Securities and Exchange Commission

COMPLAINT

30