**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
*kandrassy@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: 714 445-1000
Facsimile:  714 445-1002

Attorneys for Jeffrey E. Brandlin,
Receiver

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br><br>    v.<br><br>RICHARD VU NGUYEN, A/K/A NGUYEN THANH VU, AND NTV FINANCIAL GROUP, INC.,<br><br>               Defendants,<br><br>and<br><br>MAI DO,<br><br>          Relief Defendant. | Case No. SACV19-1174-SVW (KESX)<br><br>**FIRST INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF FEES OF:**<br><br>**(1) JEFFREY BRANDLIN, RECEIVER, AND BRANDLIN & ASSOCIATES; AND**<br><br>**(2) SMILEY WANG-EKVALL, LLP**<br><br>**[Declaration of Kyra Andrassy filed concurrently]**<br><br>DATE:    March 14, 2022<br>TIME:    1:30 p.m.<br>CTRM:   10A<br>           First Street Courthouse<br>           350 W. 1st Street,<br>           Los Angeles, California<br>JUDGE:  Hon. Stephen V. Wilson |

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# **TABLE OF CONTENTS**

**Page**

I.    GENERAL CASE BACKGROUND .......................................................... 1

    A.    The SEC Commenced Its Civil Enforcement Action and Sought the Appointment of the Receiver to Preserve and Recover Assets for the Benefit of the Investors NTV and the Defendants Defrauded ............................................................. 1

    B.    The Receiver Took Control of NTV's Assets, Obtained Turnover of Funds in Known Bank Accounts, and Liquidated the Remaining Investments in Brokerage Accounts to Preserve Value ........................................................... 2

    C.    The Job of the Receiver and His Professionals Was Made More Difficult and Time-Consuming Because of the Defendants' Failure to Cooperate and Their Deceitfulness ......... 3

        1.    The Receiver Had to Create an Investor List from Documents Seized at NTV's Office ..................................... 3

        2.    The Receiver Had to Obtain Documents from Banks and Financial Institutions Because the Defendants Did Not Maintain or Produce Them and, from the Documents Produced, Determined that the Defendants Had Lied, Forcing the SEC to Request an Expansion of the Asset Freeze to Cover Assets That Had Been Concealed ...................................................... 4

        3.    The Defendants Violated Court Orders to Disclose Their Assets and Dissipated $315,000 in Refinance Proceeds Deposited Into a Concealed Bank Account ....... 5

        4.    The Receiver and His Professionals Obtain a Court Order to Expand the Scope of the Receivership to Include Two Residential Properties Purchased with Investor Funds ..................................................................... 6

        5.    The Receiver Sold the Three Real Properties ................... 6

        6.    The Results of the Receiver's Analysis of the Sources and Uses of NTV Funds ...................................... 7

II.   THE FEES OF THE APPLICANTS ....................................................... 8

    A.    Summary of the Fees Requested ............................................... 8

        1.    Brandlin ..................................................................... 8

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2.  SWE ................................................................................ 9

B.  Case Administration ................................................................. 10

1.  Brandlin .......................................................................... 10

2.  SWE .............................................................................. 10

C.  Court Appearances ................................................................. 11

D.  Onsite Fieldwork ................................................................... 11

E.  Forensic Accounting ............................................................... 12

F.  Asset Freeze and Analysis/Liquidation ..................................... 13

1.  Brandlin .......................................................................... 13

    (a)  General Asset Freeze/Expansion of
         Receivership Estate ................................................. 13

    (b)  Real Estate Evaluation ............................................. 14

2.  SWE .............................................................................. 14

    (a)  General Asset Analysis ............................................. 14

    (b)  General Asset Disposition ......................................... 16

    (c)  17th Street Asset Analysis ........................................ 16

    (d)  17th Street Property Sale .......................................... 17

    (e)  Monte Carlo/Westwood Asset Recovery ..................... 18

    (f)  Westwood Sale ....................................................... 19

    (g)  Monte Carlo Sale .................................................... 19

G.  Investor Analysis/Claims ........................................................ 20

1.  Brandlin .......................................................................... 20

2.  SWE .............................................................................. 20

H.  Litigation ............................................................................. 21

1.  Brandlin .......................................................................... 21

2.  SWE .............................................................................. 21

I.  Communications with Investigators .......................................... 22

J.  Fee Applications ................................................................... 22

1.  Brandlin .......................................................................... 22

2.  SWE .............................................................................. 22

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

III.    Costs ............................................................................................. 22
            1.      Brandlin ................................................................................ 22
            2.      SWE ...................................................................................... 23
IV.    MEMORANDUM OF POINTS AND AUTHORITIES ......................... 23
V.     CONCLUSION................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE HONORABLE STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE, AND ALL PARTIES IN INTEREST:**

Jeffrey Brandlin (the "Receiver"), the receiver appointed by the Court in the above-captioned action, his forensic accountants, Brandlin & Associates (the "Brandlin Firm" and, together with the Receiver, "Brandlin"), and his counsel, Smiley Wang-Ekvall ("SWE" and, together with the Receiver and the Brandlin Firm, the "Applicants") submit their first interim application for allowance and payment of fees and costs for the period from June 25, 2019, through October 31, 2021.  The Applicants are informed that the Securities & Exchange Commission has no objection to the relief sought in this application.  In support of the application, the Applicants submit the following memorandum of points and authorities and the declarations of Jeffrey Brandlin and Kyra E. Andrassy in support thereof, and respectfully represent as follows:

## I.   GENERAL CASE BACKGROUND

### A.   The SEC Commenced Its Civil Enforcement Action and Sought the Appointment of the Receiver to Preserve and Recover Assets for the Benefit of the Investors NTV and the Defendants Defrauded

The Securities and Exchange Commission ("SEC") filed a civil complaint against NTV Financial Group, Inc. ("NTV"), and its principal, Richard Nguyen, in June 2019.  The SEC named Mai Do, who was at that time Mr. Nguyen's fiancé and is now his wife, as a relief defendant because she received funds from NTV (Richard Nguyen and Mai Do are together referred to as the "Defendants").  The case was originally assigned to the Hon. Andrew Guilford, who has since retired.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**B.**   **The Receiver Took Control of NTV's Assets, Obtained Turnover of Funds in Known Bank Accounts, and Liquidated the Remaining Investments in Brokerage Accounts to Preserve Value**

By order entered on June 24, 2019, the Court granted the SEC's motion for a temporary restraining order and appointed the Receiver as a temporary receiver over the assets of NTV and Mr. Nguyen.  The scope of the receivership included all bank and brokerage accounts through which investor funds flowed, including known bank accounts specifically listed in the order.  As required by this order, the Receiver and his counsel immediately took control of NTV's business premises by changing the locks, redirecting the mail, taking an inventory of the personal property at the location, reviewing the information for leads on assets, and packing up the documents, computers, and other records that remained at the location. Using information obtained from the SEC, the Receiver immediately caused notice to be given to all of the banks and brokerage firms where NTV and Richard Nguyen held accounts of the issuance of the restraining order and the appointment of the Receiver and requested that the banks turnover the funds on deposit to the Receiver.  At that time, NTV also had money invested in several brokerage accounts.  After getting additional information from the brokerage firms about how the money had been invested, in order to minimize any further losses, the Receiver instructed the brokerage firms to liquidate the investments and to remit the proceeds to the Receiver.  As a result of these efforts, the Receiver collected $457,460.

During this period, the Defendants stipulated to the entry of a preliminary injunction and to the appointment of the Receiver as the permanent receiver, and the Court approved that stipulation.  That

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

stipulation marked the end of the Defendants' cooperation with the SEC and the Receiver.

**C.**   **The Job of the Receiver and His Professionals Was Made More Difficult and Time-Consuming Because of the Defendants' Failure to Cooperate and Their Deceitfulness**

At nearly every turn in the early days of this receivership, the Defendants made things more difficult by not timely cooperating and by lying to the Receiver and the SEC.

**1.**   **The Receiver Had to Create an Investor List from Documents Seized at NTV's Office**

In the early days of the case, because NTV did not use an on-line or computerized accounting system to maintain investor records and Mr. Nguyen was slow to provide any investor information to the Receiver, the Receiver had to review the books and records that were seized in order to compile a list of potential investors so that they could be given notice of the appointment of the Receiver.  Once the list was prepared, the Receiver mailed the investors a letter in both English and Vietnamese that gave them information about the receivership and the SEC's action and that directed them to a website that the Receiver set up and maintains in order to provide current information about the case.

\\
\\
\\
\\
\\
\\
\\

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**2.** **The Receiver Had to Obtain Documents from Banks and Financial Institutions Because the Defendants Did Not Maintain or Produce Them and, from the Documents Produced, Determined that the Defendants Had Lied, Forcing the SEC to Request an Expansion of the Asset Freeze to Cover Assets That Had Been Concealed**

Although the Court ordered the Defendants to cooperate with the Receiver, neither their cooperation nor accurate or truthful information was forthcoming, forcing the Receiver to obtain information from banks and financial institutions instead of being voluntarily provided with documents as required by the Court's order.  The Court also ordered the Defendants to provide a detailed and complete schedule of all of their assets, including a description of the sources of the assets.  The schedule that they filed was replete with misinformation, including lies about how real properties and two luxury cars that they owned were acquired.  Based on escrow files and bank records obtained by service of subpoenas on third parties, the Receiver determined that funds belonging to NTV funded the down payments for the homes and the cars and some jewelry.  In addition, when researching the status of the real properties disclosed in this accounting, the Receiver learned that the Defendants had recently listed one of the properties for sale.  The SEC and the Receiver notified their counsel that this was a violation of the Court's asset freeze order and requested that they take the house off the market, but they declined to do so.

Accordingly, the SEC was forced to move on an expedited basis for an order to amend the asset freeze order to specifically include the additional assets that were acquired with investor funds.  The Receiver worked with

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

the SEC with respect to this filing and submitted a declaration in support of it. Despite the evidence submitted with the application that showed that the Defendants had lied about the source of funds used to acquire these assets, Mr. Nguyen opposed the motion. At the initial hearing, the Court granted the motion on a temporary basis and continued the matter for a final hearing in order to give Mr. Nguyen additional time to obtain and review documentation. The parties then stipulated to a further extension of the hearing and, after much discussion, the expanded asset freeze order.

### 3. The Defendants Violated Court Orders to Disclose Their Assets and Dissipated $315,000 in Refinance Proceeds Deposited Into a Concealed Bank Account

In the meantime, the SEC and the Receiver learned that the accounting submitted by Mr. Nguyen and Ms. Do omitted fourteen different bank and brokerage accounts. The Receiver also learned that early on in the case, Ms. Do had refinanced a property and taken $315,000 in cash out that she deposited into a bank account in her name, at which time it became subject to the asset freeze order. The account that she deposited them into was an account that she had not disclosed and that neither the SEC nor the Receiver was aware of and that appeared to have been opened for the purpose of receiving and then distributing the refinance proceeds for various personal purposes. Because of their blatant disregard for Court orders, the SEC moved for an order to show cause why the Defendants should not be held in contempt of Court. The Receiver prepared a detailed declaration in support of that motion. The Defendants opposed that motion. Ultimately, the Court ordered them to file declarations about their bank and brokerage accounts and the disposition or whereabouts of certain assets. The

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

5

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Receiver also served subpoenas on financial institutions to trace the funds from the refinance.

**4.** **The Receiver and His Professionals Obtain a Court Order to Expand the Scope of the Receivership to Include Two Residential Properties Purchased with Investor Funds**

After the Defendants were forced to provide additional disclosures, the Receiver filed a motion to formally bring the two properties in Santa Ana, fine jewelry, and the cars into the receivership estate because the assets had been acquired with funds belonging to NTV.  The Applicants then learned that Mr. Nguyen and Ms. Do had sold the cars and jewelry, in violation of Court orders.  The Applicants also determined from documents produced by various financial institutions that the funds from the refinance had been completely dissipated.  Mr. Nguyen and Ms. Do opposed this motion and submitted evidentiary objections that were overruled.  The Court granted the motion, but since only the two real properties remained and the cash from the sale of the cars and jewelry had been spent, only the two homes were formally brought into the receivership estate.

**5.** **The Receiver Sold the Three Real Properties**

The Receiver then turned to administration of the estate.  He obtained Court approval of his retention of brokers to market an office condominium and the two residential properties in Santa Ana and of bidding procedures for the sale of the three properties.  The Receiver sold all three properties, generating net proceeds of $311,359 for the receivership estate.  Using the results of the forensic accounting performed by the Applicants, the Receiver identified payments that were made with funds traceable to investors for non-business purposes and, with Court approval, retained special litigation

counsel on a contingency fee basis to pursue these actions.  Through October 31, 2021, these efforts had generated net recoveries of $281,144 for the receivership estate, with an additional $137,163 estimated to be collected on the remaining actions that have not yet been finally resolved.

**6.      The Results of the Receiver's Analysis of the Sources and Uses of NTV Funds**

With respect to the investors, the Receiver analyzed the bank records to verify the amount each investor put in and the amount some of them received from NTV.  The Applicants have determined that NTV raised a total of $3,903,907, from the following sources:

| | |
|---|---|
| Beginning cash on 2/1/18 (not from NTV investors) | $2,795 |
| NTV investor deposits | $2,935,201 |
| Transfers in from brokerage accounts | $2,016,550 |
| Managed Accounts:  Client Deposits and Advisory Fees | $569,331 |
| Unknown bank transactions, including cash transactions | $493,786 |
| Merchant banked transactions | $161,953 |
| Other | $232,429 |
| Total funds in | $6,409,249 |

Based on the forensic accounting as of October 31, 2021, these funds were then used as follows:

| | |
|---|---|
| Repayments/Dividends to investors | $1,165,096 |
| Transfers out to brokerage accounts | $2,701,300 |
| NTV Business Expenses | $217,204 |
| Teller/ATM withdrawals | $522,456 |
| Payment of personal expenses of Richard Nguyen and Mai Do, including funds traced into the two real properties | $1,354,782 |
| Unidentifiable transactions | $444,030 |
| Total funds out | $6,404,868 |

The Receiver is in possession of the balance of the funds that were not used and the net proceeds from the sale of the real properties and has also recovered some of the funds used for personal expenses through clawback actions.  As of October 31 2021, the Receiver was holding $1,020,092.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

A snapshot of the results of the Receiver's administration of the estate through October 31, 2021, is as follows:

| | |
|---|---|
| Amount recovered from bank accounts and liquidation of investments | $457,460 |
| Amount realized from the sale of the three real properties, net of expenses of sale | $311,359 |
| Clawback litigation net recoveries to date | $281,144 |
| Miscellaneous deposits | $1,660 |
| Less costs of the receivership, including locksmith fees, website hosting fees, postage, etc. | <$31,532> |
| Ending Cash balance as of October 31, 2021 | $1,020,092 |

With respect to the investors, the Receiver has determined that there are net investments of approximately $1,770,105 outstanding.  The Receiver has prepared a motion to approve a claims procedure for the filing of claims and, once that process is complete, will seek authorization to make an interim distribution to investors.

At present and including estimated fees for the Applicants and counsel through the end of the receivership, the Receiver is estimating a return to investors of approximately 35% of their net investment.  Had the Receiver not been appointed and the funds on hand distributed to investors outside of a receivership, the investors would have received a return of approximately 26% of their net investment.[1]

II.    **THE FEES OF THE APPLICANTS**

   A.    **Summary of the Fees Requested**

      1.    **Brandlin**

Through October 31, 2021, Brandlin has incurred fees totaling $221,206.25.  Of these fees, $128,750.25 were incurred by the Receiver and the balance by the Brandlin Firm.  These fees reflect a 23% discount off of their normal hourly rates.  The Standardized Fund Accounting Report for

---

[1] This is calculated by dividing the funds and investments in bank and brokerage accounts as of the date of the Receiver's appointment, totaling $457,460, by the total net investments of the investors, which is $1,770,105.

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   the application period, which is required by the SEC to be attached to the

2   fee application, is provided as Exhibit "1" and Brandlin's invoice is attached

3   as Exhibit "2."

4           **2.   <u>SWE</u>**

5           As SWE has previously explained in connection with the submission of

6   its fee statements in connection with a prior status report, when SWE was

7   retained, it proposed a blended hourly rate for attorneys billing on the case

8   of $495, based on expectations about how the case would be staffed.  The

9   Court approved this blended hourly rate.  Using this billing rate, SWE's fees

10  through October 31, 2021, would be $266,211.  However, based on the

11  actual billings on the case and the amount of the work done by an associate

12  instead of a partner, SWE believes that this billing rate has proven to be too

13  high, resulting in SWE making money on this matter when it should be

14  discounting its fees.  Accordingly, SWE has proposed to the SEC and

15  proposes to this Court that it instead apply a 10% reduction to its standard

16  hourly rates.  This is the firm's standard practice in receivership cases.  If

17  this is done, then the outstanding amount of fees as of October 31, 2021,

18  would be $202,638.20, plus costs of $16,275.54.  The invoice that is

19  attached to the concurrently-filed declaration of Kyra Andrassy as Exhibit "1"

20  uses the discounted hourly rates.

21          Assuming the discounted hourly rate method is approved, as

22  explained below, SWE is voluntarily reducing its fees by another $10,000.00

23  so that the amount of fees that SWE is seeking allowance of on an interim

24  basis through October 31, 2021, is $192,638.20.

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

B. **Case Administration**

1. **Brandlin**

[Total fees for Brandlin:  $26,240.75 for 68.25 hours of work; blended hourly rate: $384.48]

In the course of any receivership, various administrative tasks must be performed.  Here, these included communications with counsel for the Defendants, preparing task lists and status reports, communicating with the SEC about the preliminary results of the forensic accounting, the review and execution of declarations in support of motions filed in connection with the receivership, communicating with investors and other parties with potential information related to assets, and arranging locksmiths.  These efforts are critical to any receivership.  Although categorized as "administrative," the bulk of the tasks in this category were substantive ones.  However, for tasks that are more secretarial in nature, Brandlin has reduced the rates on those tasks to their lowest rate, regardless of who performed the work.

2. **SWE**

[Total fees for SWE: $21,380.40 for 89.90 hours of work; blended hourly rate: $237.82]

SWE incurred fees in this category assisting the Receiver in taking control of the office condominium and reviewing the records at that location to quickly identify other potential sources of recovery.  SWE communicated with advertisers to ensure that NTV advertisements stopped running, and redirected NTV's website to the website set up by the Receiver to provide investors with case information.  SWE obtained Court approval to abandon the fish tanks at the NTV location.  SWE also prepared a motion for authority for the Receiver to retain the Brandlin Firm and a computer forensic expert and for procedures with respect to the abandonment of personal property.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

The Court granted that motion.  SWE has prepared status reports and communicated with the SEC about the status of the receivership.  As explained above, it also worked with the SEC to bring additional assets within the purview of the asset freeze and to obtain additional disclosures from Mr. Nguyen and Ms. Do.  SWE also fields communications from investors with questions about the status of the case and the next steps.  Where the services in this category are more administrative in nature than they are legal, SWE has not charged for those services.  SWE also does not charge for routine investor communications.

## C.    **Court Appearances**

[Brandlin total fees:  $2,897.50 for 6.70 hours of work; Blended hourly rate: $432.46]

The time in this category is for the time that the Receiver spent appearing in Court when he was initially appointed and then later when the parties were litigating the scope of the amended preliminary injunction and negotiating the terms and timing of the Defendants' compliance with Court orders regarding asset disclosures.

## D.    **Onsite Fieldwork**

[Brandlin total fees:  $8,396.25 for 32.30 hours of work; Blended hourly rate: $259.95]

Imperative in any receivership is obtaining control over the business premises as soon as possible in order to preserve the best information possible and limit further harm.  In this case, in the afternoon of the day that the Court appointed the Receiver, the Applicants went to the office in Santa Ana.  The locks were changed on the doors and the mailbox, a notice was posted on the door directing any investors going to the business in person to the Receiver or his counsel, and the computers, books and records, and a

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1  phone that were left in the office were inventoried and then packaged up.

2  One of the Receiver's team members also went to the office prior to it being

3  listed for sale in order to deliver some goldfish that were left in three different

4  tanks to a local fish and aquarium store and to remove the aquariums in

5  order to make the space more marketable.  Tasks that were more

6  administrative in nature have been billed at reduced rates.

### E.    Forensic Accounting

[Brandlin total fees:  $66,755.00 for 180.50 hours of work; Blended hourly rate:
$369.83]

The Defendants were, at best, minimally cooperative with the
Receiver.  Although required to provide the Receiver with information and
documents and to otherwise cooperate with him, the Defendants took weeks
to get the Receiver information and, even then, it was incomplete and took
many weeks more to get things as simple as the password to NTV's email
account.  In addition, NTV did not maintain computerized records of the
money invested with it.  Instead, Mr. Nguyen generated manual statements
each month for investors.  NTV did not even maintain bank records.  As a
result, the Receiver and his team were forced to obtain this information from
banks that held accounts for NTV, Mr. Nguyen, and Ms. Do.  Once the
records were produced and utilizing the data that had been obtained from
the SEC so that the SEC's efforts were not duplicated, Brandlin
reconstructed the amount of funds that came in and how they were used.  It
was through this process that Brandlin determined that Mr. Nguyen and Ms.
Do had lied about the sources of funds used to acquire assets and had
concealed other assets.  These efforts resulted in the addition of the two
homes in Santa Ana to the receivership estate.  The Receiver and his team
also culled through the documents that were seized from NTV's business

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

premises to identify other leads on assets, as well as information about investors and creditors. The accounting has enabled the Receiver to report to this Court and to the SEC how much came into NTV, how much was invested, how much was lost, how much was dissipated, and how much remained. This information paves the way for the administration of the receivership estate and is critical to any receivership.

**F.** **Asset Freeze and Analysis/Liquidation**

    **1.** **Brandlin**

        **(a)** **General Asset Freeze/Expansion of Receivership Estate**

[Brandlin total fees: $39,493.25 for 88.75 hours of work; Blended hourly rate: $444.99]

Brandlin incurred fees in this category monitoring NTV's brokerage accounts, understanding what the investments were to determine how best to proceed, and then liquidating the investments. Once the brokerage accounts were liquidated, Brandlin utilized the results of the review of NTV's bank records in order to identify other potential assets. These efforts resulted in the identification of a number of potential sources of recovery, including two luxury cars and two residential properties that were acquired with NTV funds, although the Defendants represented that they had been acquired with other sources. The Applicants worked closely with the SEC to expand the scope of the asset freeze order to include assets acquired with funds traceable to NTV and to monitor and obtain Mr. Nguyen's and Ms. Do's compliance with Court orders. Although they ultimately stipulated to the expanded asset freeze, Mr. Nguyen and Ms. Do initially opposed these efforts, forcing the Receiver to be prepared to testify at possible evidentiary hearings.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

The above efforts increased the receivership estate by bringing in two properties that together generated net proceeds of $291,912 for the receivership estate.  Had Mr. Nguyen and Ms. Do not violated Court orders by selling the jewelry and cars that were acquired with investor funds, the Receiver would have recovered additional funds for the receivership estate as a result of the Applicants' efforts in this category.

### (b)  Real Estate Evaluation

[Brandlin total fees:  $10,362.00 for 27.10 hours of work; Blended hourly rate: $382.36]

Because this receivership involved three pieces of property, Brandlin interviewed brokers, reviewed broker price opinions and their marketing proposals, analyzed the potential equity in the properties, and determined that the equity justified their marketing.  All three of the properties have been sold, generating approximately $311,359 for the receivership estate.

### 2.  SWE

### (a)  General Asset Analysis

[SWE total fees:  $86,446.85 for 251.80 hours of work; Blended hourly rate:  $343.32]

SWE spent time in the asset analysis category reviewing the information obtained by the SEC about NTV bank accounts to prepare letters to the various banks informing them of the asset freeze, the appointment of the Receiver, requesting the bank records, and instructing the banks to turnover the funds on deposit to the Receiver.  As the banks produced documents, SWE reviewed the cancelled checks to identify any suspicious payees and the bank statements for suspicious transfers, a task that became critically important since the Defendants concealed assets and lied about the source of funds used to acquire others.  SWE then used this

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  information to prepare subpoenas to third parties to obtain documents

2  related to these payments and transfers.

3       Through these efforts and utilizing the forensic accounting done by

4  Brandlin, a number of potential additional assets belonging to the

5  receivership estate and that had been concealed by Mr. Nguyen and Ms. Do

6  were identified.  SWE worked with the SEC to expand the scope of the

7  preliminary injunction and asset freeze to include assets acquired with

8  investor funds and to compel the compliance of Mr. Nguyen and Ms. Do with

9  the Court orders.  SWE worked with the SEC on the language to include in

10 the amended preliminary injunction that the Court issued.  With these assets

11 identified and frozen, SWE then prepared a motion to formally bring these

12 assets within the scope of the receivership, although that time is reflected in

13 the "Monte Carlo/Westwood Asset Recovery" category below.

14 Unfortunately, because the Defendants concealed assets and lied to the

15 Receiver and the SEC, by the time the truth was uncovered, Mr. Nguyen

16 and Ms. Do had sold the cars and jewelry and spent the proceeds so that

17 they could not be recovered for the benefit of investors.

18      SWE also worked with Brandlin, utilizing its forensic accounting, to

19 identify potential litigation targets.  Because SWE is a smaller firm that limits

20 the amount of contingency fee work it does at any given time, the Receiver

21 sought retain special counsel to pursue these claims on a contingency fee

22 basis, and SWE worked with special counsel to prepare and file the motion

23 for authority to do so.  The Court approved that motion.

24      In sum, SWE's fees in the asset analysis category were incurred

25 liquidating assets and expanding the scope of the receivership estate and

26 doing work that was necessitated by the Defendants' lack of cooperation and

27 deceitfulness.  SWE's fees incurred in the asset analysis category do not

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

include the fees and costs incurred specifically in connection with the sales of the three real properties.  The fees for SWE particular to those efforts are instead separately categorized below.

### (b)   General Asset Disposition

[SWE total fees:  $754.20 for 4.00 hours of work; Blended hourly rate:  $188.55]

When the Receiver was appointed, there were a few large fish tanks in the office condominium with fish in them.  SWE incurred a small amount of fees preparing a stipulation permitting the Receiver to abandon the fish. Although it was contemplated that Mr. Nguyen would take all of the fish, he instead only retrieved a few, requiring the Receiver to then give the remaining fish to a fish store and to dispose of the empty tanks.  SWE did not charge for the fees incurred in connection with meeting Mr. Nguyen at the office condominium, which SWE handled because of its proximity to the office condominium.

### (c)   17th Street Asset Analysis

[SWE total fees:  $2,021.40 for 5.10 hours of work; Blended hourly rate:  $396.35]

One of the assets of the receivership estate was the office condominium in Santa Ana.  Because NTV maintained no books and records, SWE incurred time in this category communicating with the lienholder to determine the terms of the loan and verify the validity of the secured claim.  The Firm reviewed the preliminary title report and, based on that review and the broker opinions of value, it appeared that the asset was worth administering so SWE incurred time in the next category in connection with its marketing and sale.

### (d)   17th Street Property Sale

[SWE total fees:  $17,703.90 for 51.40 hours of work, before voluntary fee reduction of $10,000.00; Blended hourly rate:  $344.43]

SWE incurred fees in this category in connection with the motion to retain the broker and for approval of sale procedures.  SWE prepared addendums to counteroffers with legal provisions particular to receiverships. SWE communicated with Orange Coast Title regarding tax liens and then worked to reduce those liens, which were related to payroll taxes. Unfortunately, the office condominium did not draw the amount of interest expected, likely because it was a unit that did not contain its own bathroom. After fairly significant marketing efforts, a buyer was ultimately identified and SWE prepared the motion for approval of the auction procedures and the sale of the condominium.  In connection with the preparation of this motion, SWE negotiated with the secured creditor regarding a prepayment penalty provision contained in the loan documents.  Unwilling to reach what the Receiver viewed as a reasonable compromise, SWE sought disallowance of the entirety of the prepayment penalty.  The Court granted the sale motion and disallowed the prepayment penalty.  The sale eventually closed, generating approximately $19,500 for the benefit of the receivership estate.

Although SWE believes its efforts in this category were reasonable and necessary when the services were performed, given the lower than expected sale price and to ensure that the receivership estate realizes a benefit from this asset's administration, SWE is voluntarily reducing its fees incurred in connection with this asset by $10,000.  This reduction is reflected in the prayer for relief below.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**SMILEY WANG-EKVALL, LLP**
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### (e)   Monte Carlo/Westwood Asset Recovery

[SWE total fees:  $29,781.45 for 112.80 hours of work; Blended hourly rate:  $264.02]

Based on preliminary results from the forensic accounting that included checks made out to escrow companies, SWE issued subpoenas to two escrow companies for escrow files related to the acquisition of the Westwood and Monte Carlo properties.  Although Mr. Nguyen and Ms. Do claimed that these properties were acquired with funds other than those belonging to investors, once the escrow companies produced the files, SWE verified that the Defendants had lied and traced the acquisition of these two properties to investor funds.  Accordingly, SWE prepared a motion to expand the scope of the receivership estate to include the two residential real properties.  The motion also included some jewelry and two cars purchased with funds traceable to investors, but by the time SWE was able to obtain documents from third parties to trace the source of the funds used to acquire these assets to investors, Mai Do and Richard Nguyen had already sold them and dissipated the proceeds.  Despite being caught in a lie, the Defendants opposed the Receiver's motion, arguing that they were being deprived of property without due process, so SWE incurred fees preparing a reply.  The Court overruled the defendants' objections and granted the motion, so the efforts in this category resulted in the two residential real properties being added to the receivership estate.

Because the defendants resided in one of the properties and in order to be able to hold them in civil contempt if they again failed to abide by a Court order, SWE prepared a stipulation for turnover of the Westwood property so that there would be a deadline in a Court order for the defendants to vacate the Westwood property.  Surprisingly, the stipulation

proved unnecessary when the defendants moved out of the residence voluntarily.  SWE coordinated with Mr. Nguyen and Ms. Do through their counsel on the physical turnover of both properties, and did not charge for the purely administrative time spent in picking up keys and meeting the locksmith.  These efforts were instrumental in helping to generate net proceeds from the sale of these two properties of approximately $291,900.

### (f)   Westwood Sale

[SWE total fees:  $9,478.35 for 25.90 hours of work; Blended hourly rate:  $365.96]

This real property is one of the two that was brought into the receivership estate as a result of the Receiver's forensic accounting and SWE's efforts.  SWE reviewed the preliminary title report to verify the liens against the property, communicated with the broker and the Receiver regarding marketing efforts, prepared an addendum to a counteroffer with legal provisions particular to receiverships, and prepared a motion to approve the sale of the property.  SWE also prepared a motion to employ the broker and to approve sale procedures, but the motion also pertained to the Monte Carlo property and that time is reflected in that category.  The sale of the Westwood property has closed, and generated net proceeds of approximately $219,000 for the benefit of the receivership estate.

### (g)   Monte Carlo Sale

[SWE total fees:  $23,827.95 for 71.00 hours of work; Blended hourly rate:  $335.60]

SWE incurred fees preparing an addendum to the listing agreement for this property with provisions typical for receiverships.  SWE also prepared the motion to employ a broker and to approve sale procedures for both this property and the Westwood property.  Once an acceptable offer was

reached, SWE prepared a motion to approve bid procedures and the sale but, before that motion could be filed, the buyer cancelled the transaction. Fortunately, the broker quickly got the property back into escrow, and SWE prepared a motion to approve bid procedures and a motion to sell the property.  Both were approved, and the sale closed and approximately $72,500 in net proceeds were generated for the receivership estate.

### G.  Investor Analysis/Claims

#### 1.  Brandlin

[Total fees:  $20,699.00 for 60.95 hours of work; Blended hourly rate: $339.11]

In the early days of the case, Brandlin had to use the records seized at the NTV office to prepare an initial list of investors because NTV did not maintain any computerized records for the investors and Mr. Nguyen did not timely produce the required information.  After a couple of weeks, Mr. Nguyen provided hard copies of the most recent investor statements he had manually prepared, and the Receiver used these lists to provide an initial communication to investors about NTV, the receivership, and the SEC's civil enforcement action.  Once the forensic accounting was completed, Brandlin then used that information to verify the actual amount put in by each investor, the distributions made to some of them, and their net investment in NTV.  Brandlin also fielded calls and inquiries from investors and responded to their requests for information.  This work will pave the way for a distribution to investors.

#### 2.  SWE

[Total fees:  $8,048.25 for 24.70 hours of work; Blended hourly rate:  $325.84]

Because Brandlin has completed the investor analysis, SWE prepared a motion to approve a claims procedure.  The motion is set for a hearing on

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

March 14, 2022.  If granted, it will establish a timeline and procedure for investors to file claims against the receivership estate and a procedure for resolving any disputes that cannot be informally resolved.

### H.   Litigation

#### 1.   Brandlin

[Total fees:  $42,352.50 for 87.05 hours of work; Blended hourly rate:  $486.53]

Brandlin spent time in this category identifying potential clawback actions and then using the results of the forensic accounting to assist special litigation counsel in formulating the demands and complaints.  The Receiver consulted with special litigation counsel regarding proposed settlements and strategies.  Ultimately, these efforts resulted in net recoveries through October 31, 2021, of $281,144, with additional anticipated recoveries of approximately $137,163 expected.

#### 2.   SWE

[Total fees:  $3,195.45 for 8.60 hours of work; Blended hourly rate:  $371.56]

SWE incurred a modest amount of time in this category related mostly to the SEC's civil enforcement action.  Because the Receiver was vested with sole authority over NTV, he entered into a consent judgment with the SEC that resolved the claims against NTV.  SWE reviewed this consent judgment prior to the Receiver signing it.  SWE also communicated with the SEC about utilizing the Receiver as a fact witness in the trial that was then anticipated.  It also reviewed the consent judgments entered into by Mr. Nguyen and Ms. Do in order to determine what effect, if any, those would have in relation to any disgorgement actions against them.  SWE also incurred a small amount of time in this category providing information to special litigation counsel pursuing the clawback actions.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

I.      **Communications with Investigators**

[Brandlin total fees:  $4,010.00 for 10.40 hours of work; Blended hourly rate:  $385.58]

The Receiver and his staff spent a fairly modest amount of time in this category communicating with criminal investigators regarding the results of the forensic accounting performed by Brandlin.

J.      **Fee Applications**

1.      **Brandlin**

[Brandlin total fees:  $0.00 for 12.40 hours of work; Blended hourly rate:  $0.00]

The time in this category was spent coding billing entries and monitoring the amount of time and fees incurred in connection with this case.  As required by the SEC, the Applicants have not charged for time incurred in connection with fee applications.

2.      **SWE**

[Total fees:  $0.00 for 12.10 hours of work; Blended hourly rate:  $0.00]

The Firm incurred time in this category in connection with the fee applications.  In accordance with the SEC's Billing Guidelines, the Firm has not charged the receivership estate for time incurred in this category.

III.    **Costs**

The Applicants incurred various costs for which they seek reimbursement.

1.      **Brandlin**

Brandlin incurred $1,142.81 in costs, mostly comprised of fees for the locksmith who changed the locks at the office condominium and for scanning documents retrieved from that office.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

### 2. SWE

SWE incurred expenses of $16,275.54, mostly in connection with the service of notices and status reports required to be served on all investors and creditors and on service fees associated with third party subpoenas to obtain information that the Receiver had to obtain from third parties because of the absence of books and records.  Specifically, the following costs were incurred:  (1) $5,096.03 in attorney service fees; (2) $2,307.40 for photocopies; (3) $0.30 for a clerk fee; (4) $50.21 for fees charged by the attorney's service for filing or copying fees; (5) $1,176.39 in postage; (6) $4,227.08 for translation fees, publication of the auction procedures for the three properties, and document production fees; (7) $203.70 for Pacer fees; (8) $13.92 for parking; and (9) $3,200.11 for legal research charges.

## IV. MEMORANDUM OF POINTS AND AUTHORITIES

It is a general rule that the fees and expenses of a receivership are a charge against the property administered.  *See Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994).  These expenses include the fees and expenses of the Receiver and of his or her professionals.  Decisions about the timing and amount of an award are committed to the sound discretion of the Court.  *See SEC v. Elliot*, 953 F.2d 15690, 1577 (11th Cir. 1992).

In determining whether to allow fees, courts consider "the time, labor and skill required . . . in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained."  *Coskery v. Roberts & Mander Corp.*, 200 F.2d 150, 154 (3d Cir.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1952).  No single factor is dispositive and a reasonable fee is based on all of the circumstances of the receivership.

The Applicants have provided necessary services to NTV's investors, although it is an unfortunate reality that the Defendants' pattern of deceitfulness increased the costs of the receivership.  Despite their efforts to thwart the Receiver's efforts, the Receiver was able to bring two properties into the receivership estate for the benefit of investors.  The Receiver was also able to prevent further investment losses in the brokerage accounts by promptly liquidating the accounts.  Absent the involvement of the Receiver and his professionals, all of these assets would have been dissipated.  The Receiver has identified investors, determined what their net amounts invested are, kept them abreast of case developments, and is in the process of seeking approval for a claims procedure that will pave the way for a distribution.  Based on estimates for future fees and the amount of claims, the Receiver estimates that investors should receive an approximate distribution of 35%, which is more than the estimated 26% that they would have received if only the funds in the bank and brokerage accounts had been seized.

The Applicants have submitted detailed invoices that describe the nature of the services rendered and the identity and billing rate of the professionals performing each task.  Because the Receiver's rate is higher than that of his staff, he has had staff perform the lion's share of the day to day work in order to keep the fees to a minimum.  The efforts of the Applicants have together resulted in the recovery of additional assets for the benefit of the investors and will provide a mechanism for a partial recovery for the investors who were defrauded by NTV.  The Applicants are mindful that work in federal equity receiverships is a public service, and they are

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  working as efficiently as they can to complete the administration of the

2  receivership estate.

3

4  **V.**  **CONCLUSION**

5      WHEREFORE, the Applicants respectfully request that this Court enter

6  its order:

7      1.    Allowing $221,206.25 in fees and $1,142.81 in expenses to the

8  Receiver and the Brandlin Firm on an interim basis for the period from June

9  25, 2019, through October 31, 2021;

10     2.    Allowing $192,638.20 in fees and $16,275.54 in costs to SWE on

11 an interim basis for the period from June 25, 2019, through October 31,

12 2021;

13     3.    Authorizing the payment of 80% of the fees and 100% of the

14 expenses from available funds, with the 20% balance to be held back

15 pending approval of the Receiver's final report; and

16     4.    For such further relief as the Court may deem necessary and

17 appropriate.

18

19                         Respectfully submitted,

20 DATED:  February 11, 2022      SMILEY WANG-EKVALL, LLP

21

22

23                   By:  _____/s/ Kyra E. Andrassy_____

24                        Kyra E. Andrassy
                          Counsel for Jeffrey E. Brandlin,
25                        Receiver

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## DECLARATION OF JEFFREY E. BRANDLIN

I, Jeffrey E. Brandlin, declare as follows:

1.     I know the facts contained in this declaration to be true of my own personal knowledge and, if called as a witness, could and would competently testify with respect thereto.

2.     I am the permanent receiver appointed with respect to NTV Financial Group, Inc. and certain assets and bank accounts held by or for the benefit of Richard Nguyen and Mai Do.  I am also the founding partner of Brandlin & Associates (the "Firm"), which I obtained Court approval to retain as the estate's forensic accountants.  I make this declaration in support of the first interim fee application for my fees and the Firm's fees (the "Application") for the period from June 25, 2019, through October 31, 2021. Unless otherwise defined in this declaration, all terms defined in the Application are incorporated herein by this reference.

3.     Attached hereto as Exhibit "1" is the Schedule of Cash Receipts and Disbursements for the period from June 25, 2019, through October 31, 2021.

4.     In the ordinary course of its business, the Firm keeps a record of all time expended by its professionals and para-professionals in the rendering of professional services on a computerized billing system as follows:  At or near the time the professional services are rendered, attorneys and other professionals of the Firm record (a) the description of the nature of the services performed, (b) the duration of the time expended, and (c) the client/matter name or number by either: (1) writing such information on a time sheet, or (2) inputting such information directly into the Firm's computer billing system.  For the professionals who record their time using written time sheets, the information contained in the time sheets is

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

APPLICATION

then transcribed into the Firm's computer billing system.  The Firm's computer billing system keeps a record of all time spent on a client/matter, the professional providing the services and a description of the services rendered.  The Firm's computer billing system automatically multiplies the time expended by each professional by the respective professional's billing rate to calculate the amount of the fee.  The Firm conducts its business in reliance on the accuracy of such business records.

5.     I have reviewed my bill and the entries for the Firm and attach a true and correct copy of the entries as Exhibit "2."

6.     It is the Firm's usual practice to allocate work and assignments in an efficient manner to achieve an effective result.  As demonstrated in the Application, the practice has been followed in this case.  In some cases, such allocation is not feasible, so for tasks that are purely secretarial in nature and that require no particular expertise, we have reduced the billing rate to the lowest rate charged by the Firm, regardless of which professional performed the task.

7.     Because this is a receivership, we have discounted our normal hourly rates by an average of 23%.

8.     To the best of my knowledge, information and belief, the facts set forth in the Application are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 9th day of February, 2022, at Los Angeles, California.

JEFFREY E. BRANDLIN

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2899462.1

2

APPLICATION